UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOUR K GROUP, INC.,

            Plaintiff,

- against-

NYCTL 2008-A TRUST, THE BANK OF NEW YORK as Collateral Agent and Custodian for the NYCTL 2008-A Trust, MOORING TAX ASSET GROUP, LLC, THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF FINANCE, WINDELS MARX LANE & MITTENDORF LLP, WILLIAM J. FREW and WILLIAM J. FREW LAW OFFICES,

            Defendants.

Civil Case No:

CV 12 - 2135

**COMPLAINT**

**JURY TRIAL DEMANDED**

GERSHON, J.

GO, M.J.

Plaintiff FOUR K GROUP, INC. by its attorneys, Korsinsky & Klein, LLP, as and for its Complaint against the defendants alleges as follows:

## NATURE OF THIS ACTION

1. As explained below, this action concerns several constitutional violations by State Actors and/or their agents to deprive the Plaintiff of its rights to the property known as, and located at, 422 Chelsea Road, Staten Island, New York, Block 1780 Lot 15 (the "Property").

2. Defendants' actions deprived Plaintiff of its rights in the Property for no compensation, and also constituted violations of its due process rights as well.

3. In particular, fraudulent taxes were being assessed against the Property with no notice to Plaintiff, or any owner of the Property. These taxes were purchased and/or will be purchased at a significant discount by Defendant NYCTL 2008-A Trust.

4. Defendants used these fraudulent taxes as an artifice to preclude Plaintiff from retaining its interest in the Property.

5. In point of fact, the intricately crafted design for forced forfeiture of the Property precluded anybody aside from NYCTL 2008-A Trust from acquiring the Property for its market value.

6. This was also designed to force anybody with an interest in the Property, including Plaintiff, to bid far more than the value of the Property at the foreclosure auction sale of the Property in order to retain its interest, while at the same time NYCTL would be able to acquire the Property for far less, and below market value.

7. These actions constitute an illegal taking by the City of New York, and the other defendants who were acting under color of state law, making them State Actors as well, in violation of the Takings Clause of the Constitution.

8. As also explained more fully herein, the defendants' actions also constitute violations of Plaintiff's Constitutional Due Process Rights and Right to Equal Protection Under the Law.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. § 1983, 42 U.S.C. § 1988, U.S.C.S. Amend. 4, U.S.C.S. Amend. 5, U.S.C.S. Amend. 8, and U.S.C.S. Amend. 14.

10. Venue is proper in the Eastern District of New York since the real property which is subject to this action is located in this district.

## THE PARTIES

11. Plaintiff FOUR K GROUP, INC. ("Plaintiff" or "Four K") is a domestic business corporation with a place of business at 1236 49th Street, Suite 4B, Brooklyn, New York 11219.

12. Upon information and belief, Defendant NYCTL 2008-A Trust ("NYCTL") is a Delaware Trust, and it brought the tax lien foreclosure against the Property, together with the Bank of New York as collateral agent.

13. Upon information and belief, Defendant Bank of New York ("BNY") is a New York banking corporation. BNY is Collateral Agent and Custodian for NYCTL, pursuant to an Indenture dated as of June 1, 2002 between NYCTL 2008-ATrust Issuer, JER Services, LLC, Service, Xspand, Inc., Servicer, and the Bank of New York, Trustee.

14. Defendant New York City is a duly constituted governmental entity, which encompasses the County of Richmond, where the Property is located.

15. Defendant New York City Department of Finance is a duly constituted governmental entity, which encompasses the County of Richmond, where the Property is located (Defendants New York City and New York City Department of Finance, and, to be referred to, collectively, as the "City").

16. Defendant Mooring Tax Asset Group LLC ("Mooring") is the servicing agent and/or owner of the Trust, and upon information and belief makes decisions with respect to the litigation involving the Property, with an address at 8614 Westwood Center DR # 500, Vienna, Virginia 22182.

17. Defendant Windells Marx Lane & Mittendorf LLP ("Windells Marx") represents the Trust and BNY in the Foreclosure Proceeding.

18. Defendants William J. Frew and Willian J. Frew Jr., Law Offices (the "Referee") were appointed referee for the foreclosure of the Property.

## FACTS

### A.  Plaintiff's Ownership Interest in the Property.

19. On or around March 10, 2006, Plaintiff acquired a mortgage lien on the Property in the amount of $400,000.00.

20. In or about 2009, Plaintiff commenced a foreclosure proceeding against MMM Group, Inc. to foreclosure on its mortgage.

21. On or about May 6, 2011, a judgment of foreclosure was entered in that foreclosure proceeding.

22. On or about June 23, 2011, the Property was conveyed to Plaintiff by way of Referee's Deed in Foreclosure, dated June 23, 2011.

23. Thus, on or about June 23, 2011, Plaintiff became the fee owner of the Property.

### B.  NYCTL's Acquisition of the Tax Lien at a Special Discounted Price, Pursuant to its Exclusive Arrangement with the City.

24. NYCTL is a Delaware business trust which was created pursuant to the Second Amended and Restated Declaration and Agreement of Trust, dated June 1, 2002 between the City and the Wilmington Trust Company, as Issuer Trustee. Upon information and belief, NYCTL is authorized to purchase, own and manage the collateral of the trust.

25. Upon information and belief, NYCTL is the holder of certain tax and other City of New York liens, as evidenced by a certain Tax Lien Certificate 5A, dated June 26, 2008, recorded June 26, 2008, CRFN Land Doc No. 258058, which also covers the Property (the "Tax Lien").

26. Upon information and belief, NYCTL "acquired" the Tax Lien for far less than the lien amount.

27. In particular, although the tax lien on the Property, on its face, is in the amount of approximately $110,000 at the time of foreclosure, NYCTL did not pay the City nearly as much as that to acquire the Tax Lien.

### C. The Subsequent Taxes Assessed on the Property, Which Were Confiscatory in Nature, and Imposed by the City with no Notice to the Property Owner.

28. Subsequent to the Tax Lien, the City continued to assess taxes against the Property.

29. The City assessed taxes against the Property at an increased rate far in excess of the Property's true market price, but did not notify any of the property owners about these confiscatory taxes, which left the property owners with no opportunity to challenge the lien amount.

30. The amount of taxes imposed by the City was far greater in proportion to the value of the Property.

31. In particular, the City has been assessing approximately $80,000 a year in real estate taxes, while the Property is worth only approximately $400,000.00.

32. The City's failure to give proper notice to the owners of the Property throughout the time that the City imposed its confiscatory taxes was a means by which the City ensured that the taxes owed would increase beyond the value of the Property, resulting in the taking by the defendants, as described more fully below.

### D. NYCTL's Tax Lien Foreclosure and Auction Sale on the Property, Conducted in Violation of Plaintiff's Constitutional Rights.

33. Meanwhile, on or about July 15, 2009, Defendants NYCTL and BNY commenced the foreclosure proceeding against the Property for the Tax Lien, captioned NYCTL 2008-A TRUST, and BANK OF NEW YORK as Collateral Agent and Custodian for the NYCTL 2008-A

Trust v. M & T Courts, LLC, et al., Supreme Court, Richmond County, Index No. 131136/2009 (the "Tax Lien Foreclosure Proceeding").

34. The Tax Lien Foreclosure Proceeding sought foreclosure of the Tax Lien for the full amount of the Tax Lien, even though NYCTL acquired the Tax Lien for far less than the amount owed.

35. Notably, the city allowed NYCTL to become the owner of the Tax Lien without the proviso that the full amount of the Tax Lien should be paid out of the Property, should the Property ever be sold.

36. Even though the Tax Lien on the Property was, in sum and substance, paid off as a result of the sale of the Tax Lien to NYCTL, the property owner of the Property would have to pay the entire lien amount to NYCTL, although the taxes are no longer owed.

37. The City allowed for the pay off of the Tax Lien for a discounted amount by NYCTL, but not to any other individuals (including anyone bidding at said tax auction), including the owners of the Property.

38. As the City was paid its taxes in full, by accepting whatever consideration it received from NYCTL, the property owners should not have to pay off taxes no longer owing.

39. Based on this arrangement, the true taxes owed to the City on the Property was far less than the amount of the Tax Lien, now being held by NYCTL.

40. While NYCTL may purport to be a private entity, based on the foregoing, it has been granted the exclusive right to collect the City's taxes for itself.

41. Furthermore, the City has granted NYCTL special status by not making them pay off full property taxes for properties it wants to acquire, including the Property while anyone else in the world does not have this option.

42. Moreover, NYCTL's lien holds all the characteristics of a tax lien.

43. In that regard, it is granted priority over all other liens on the Property.

44. In point of fact, as the underlying tax liability to the City was extinguished by NYCTL's acquisition of the Tax Lien, NYCTL's lien should be subject to the other liens on the Property at the time of the acquisition.

45. This means that it would be subject to Plaintiff Four K's mortgage lien, which was recorded on or around March 10, 2006.

46. On or about October 5, 2011, the State Court entered a Judgment of Foreclosure and Sale (the "Judgment of Foreclosure/Judgment Lien") in favor of NYCTL and BNY. The judgment amount was $110,011.92, plus interest and costs.

47. The Judgment of Foreclosure provided, *inter alia*, that the Referee pay from the proceeds of the sale all taxes, assessments and water rates, which, at the time of the sale, were liens and encumbrances on the Property, and that the Property not be sold subject to any tax liens.

48. Notably, the Judgment of Foreclosure, prepared by NYCTL's attorneys, carefully did not provide for an "upset price".

49. This was done by NYCTL as a calculated attempt to allow the judgment to be entered with no protest from Plaintiff, or other parties.

50. In point of fact, had the proposed judgment set forth an "upset price" of $471,030.78, which was NYCTL's opening bid for the Property, Plaintiff, and perhaps others parties with an interest in the Property, would have opposed the entry of the judgment.

51. This would have also given Plaintiff notice of NYCTL's attempt to fraudulently acquire the Property, as explained below.

52. In addition to purportedly providing the terms of the foreclosure sale, as set forth above, the Judgment of Foreclosure also awarded NYCTL and BNY the Judgment Lien in the amount of $110,011.92, plus interest and costs.

53. As set forth above, the City allowed NYCTL to acquire the Tax Lien for an amount far less than the judgment amount.

54. NYCTL was the only person and/or entity which the City allows to purchase tax liens, and the Tax Lien in particular for a discounted amount.

55. After the entry of the Judgment of Foreclosure, NYCTL published a notice of sale of the Property, listing the approximate amount of NYCTL's lien on the Property, i.e., the Judgment Lien, as $110,011.92, plus interest and costs (the "Notice of Sale").

56. This Notice of Sale stated the wrong address of the Property, as "1422 Chelsea Road, State Island, New York". Thus, the Notice of Sale was defective on its face.

57. The auction sale was scheduled for February 7, 2012 (the "Auction").

58. On February 7, 2012, Plaintiff appeared at the Auction seeking to bid on the Property.

59. Notably, as set forth above, the Property was worth only approximately $400,000.00.

60. Plaintiff appeared at the Auction and requested to review the terms of sale.

61. The Referee allowed Plaintiff to review the terms of sale, but refused to answer any questions concerning the ambiguities contained therein.

62. Specifically, the terms of sale did not indicate whether all outstanding taxes would be paid from the proceeds of the sale, and whether the successful bidder would get title to the Property free and clear of all taxes.

63. The Referee also refused to give Plaintiff a copy of the terms of sale.

64. The Referee refused to answer Plaintiff's inquiries regarding these crucial issues.

65. To Plaintiff's astonishment, NYCTL's opening bid on the Property was $471,030.17, which was far greater that the amount of NYCTL's Judgment Lien.

66. The opening bid was also far greater than the value of the Property.

67. Plaintiff protested at the commencement of the bidding process that the opening bid was a fraud, as no one would pay that much for the Property.

68. In addition, Plaintiff, as owner of the Property, had the right of redemption of the Property by paying into Court the amount due under the Tax Lien being foreclosed, pursuant to Section 1341 of the New York Real Property Actions and Proceedings Law.

69. Despite Plaintiff's protests, and despite the obvious fraud being committed in plain sight, the Referee allowed NYCTL to be the successful bidder at the Auction.

70. On February 10, 2012, Plaintiff sent a letter to NYCTL's attorneys, protesting the Auction, and explaining all defects and fraud in the Auction process.

71. Therein, Plaintiff explained to NYCTL's attorneys that the Notice of Sale was deficient, as it listed the wrong address of the Property, that the opening bid at the Auction was fraudulent, as the Judgment of Foreclosure was for $110,011.92, the failure and refusal of the Referee and Auctioneer to give the terms of the sale, as explained above, and that the judgment and underlying lien were invalid in any event, due to, *inter alia*, the invalid notices of the tax assessment, as explained more extensively below.

72. NYCTL ignored Plaintiff's protests, and, on or around February 28, 2012, NYCTL filed a motion to confirm the judgment of foreclosure and sale.

73. Therein, NYCTL asserted that the Auction was not fraudulent, as the Judgment of Foreclosure provided that the sale of the Property would not be subject to any taxes, and that the taxes would be paid by the Referee from the proceeds of the sale.

74. NYCTL asserted that, because of this, the "upset price" on the Property to make NYCTL whole is $471,030.17.

75. However, this assertion is fraudulent in fact, as, contrary to the Judgment of Foreclosure, NYCTL will not pay off the amount of taxes owing at the time of the Auction.

76. In point of fact, NYCTL will pay off the tax liens and other taxes owing for an amount far less than the $319,583.62 in real estate taxes purportedly owing on the Property above the Judgment Lien amount.

77. In point of fact, and upon information and belief, NYCTL began marketing the Property to real estate brokers for approximately $110,000, showing that its acquisition of the Property is far less than the "upset price".

78. The fact of the matter is, there is no "upset price" to make NYCTL whole. NYCTL will be made "whole" by actually making a profit through paying off the amounts owed for real estate taxes at a significant discount, and then selling the Property for its market value.

79. This will be accomplished in the following manner.

80. First, upon information and belief, NYCTL acquired the Tax Lien for far less than the $110,011.92 judgment, and it will pay off the taxes and other City liens at a deep discount.

81. Subsequently, NYCTL will pay off the other tax liens on the Property, one for a purported tax lien in the amount of $108,409.49, and another in the purported amount of $211,174.13, at a deep discount.

10

82. The payoff of the real estate taxes at a significant discount will wipe out Plaintiff's interest in the Property.

83. Thus, in this situation, the notion of an "upset price" is ludicrous.

84. The "upset price" was, in reality, a sham number which NYCTL never intended to pay, nor will ever pay, for the Property. NYCTL will certainly not be out-of-pocket this amount.

85. No one would bid against NYCTL, as the Property is worth far less than the "upset price".

86. In point of fact, the Auction was rigged. NYCTL would bid this amount, in excess of the value of the Property, and far less than NYCTL would actually pay, to acquire the Property at a tremendous discount, and extinguish all rights of owners and other lien holders for no compensation.

87. NYCTL acted in conjunction with the City to effectuate this taking of the Property, in violation of Plaintiff's Constitutional rights.

88. Based on the forgoing, NYCTL, BNY, their attorneys, Windels Marx, Moore, and the Referee were all State Actors, acting together with the City to deprive Plaintiff of its Property without compensation.

89. In short, the City violated Plaintiff's Constitutional property rights, due process rights, and right of equal protection under the law by determining that it would allow NYCTL to acquire ownership of the Property without seeking to collect the full amount of the taxes owed, while Plaintiff would have to pay the full amount.

90. Thus, at the Auction, Plaintiff was placed in the position to expend $471,030.78, or lose all its ownership rights in the Property to NYCTL who would acquire the Property for an amount significantly less.

91. The foregoing demonstrates that the City, along with the other defendants as State Actors, subjected the Plaintiff to taxes not imposed on NYCTL, who is in the same class as Plaintiff. This constitutes a violation of the Constitution's Equal Protection Clause.

92. In point of fact, NYCTL, pursuant to the terms of the Trust, will not pay the purported approximately $218,000 in taxes owing on the Property over the amount of the Lien.

93. This is why the Judgment of Foreclosure which NYCTL's attorneys submitted to the State Court provided, specifically, that the Referee would use the proceeds of the sale to pay off the taxes owed on the Property, but did not provide a specific "upset price", even though such "upset price", and its components, were available to NYCTL to provide to the Court, and all other parties in interest on notice.

94. Indeed, as seen below, as recently as April 2012 – 2 months after the auction, notices were being sent for payment of the outstanding taxes, and allowing for the owner of the Property to enter into a payoff arrangement to pay such tax bills without having the Property sold as a tax lien. There is no purpose to such notice if the City is expecting payment in full from NYCTL pursuant to the Auction and Judgment of Foreclosure.

E. **Aside from the Deprivation of Plaintiff's Constitutional Rights at the Auction, the Tax Lien on the Property is Defective, as the City Failed to Provide Notice of the Taxes**

95. In addition to the unconstitutional implementation of the real estate taxes, the taxes owed, including the taxes which are the basis of the Tax Lien, are defective as well.

96. This is because the City gave no notice of the taxes being imposed on the Property until approximately November 2011.

97. In that regard, since Plaintiff acquired its mortgage interest in the Property, and even prior thereto, the City's quarterly statements of account, notice of assessments, and notices

of property value, concerning the real estate taxes on the Property were not mailed to the proper address of the owner of the Property, or to any proper address or person for that matter.

98. It was only in approximately November 2011, when, after acquiring fee ownership in the Property pursuant to the Referee's deed, Plaintiff contacted the City to send its real estate tax notices to his business office address, did the notices begin going to any place.

99. Prior thereto, as evidenced by a review of the documents on the New York City Department of Finance's website concerning the real estate taxes on the Property, the City's mailings were going to "Bad Location Address", and "M & M Group, LLC, Chelsea Road, Staten Island NY 00000". These are undeliverable addresses and the notices never reached the owners of the Property.

100. Had the notices been properly mailed, Plaintiff Four K, or its previous owner, would have had the opportunity to challenge the assessments as an aggrieved party under Section 704 of the New York Real Property Tax Law, based on the fact that the real estate taxes were plainly confiscatory in nature.

101. In that regard, the legitimate amount of taxes to be charged on the Property, worth only approximately $400,000 should be a fraction of the approximately $80,000 in annual real estate taxes charged to the Property.

102. As a result of the City's failure to give notice, the confiscatory real estate taxes was not timely challenged by anyone.

103. The City's failure to provide proper notice of the taxes being assessed on the Property was a violation of Plaintiff's Constitutional Due Process rights.

F. **The City's Imminent Sale of the Subsequent Tax Lien Which Must be Enjoined to Preclude the Defendants' Final Step in the Unconstitutional and Fraudulent Scheme.**

104. On February 15, 2012, shortly after the Auction, the City mailed a 90 Day Notice of Intention to Sell Tax Liens concerning the Property.

105. Significantly, this notice was for the sale of the approximately $211,174.13 in real estate taxes which constituted part of NYCTL's "upset price", as explained above.

106. Curiously, this notice came almost immediately after the Auction.

107. It is obvious that the City intends to "sell" these tax liens to NYCTL, as it sold the Tax Lien, at a discounted price.

108. This further evidences the massive fraud being perpetrated by the City and the other defendants acting together with the City under color of state law.

109. This is because there is no purpose or need for this notice if the City should be expecting payment in full of all real estate taxes on the Property from NYCTL, pursuant to the Auction, and Judgment of Foreclosure.

110. This notice of sale demonstrates that NYCTL will not be paying off the real estate taxes.

111. In the very least, NYCTL will not be paying off the real estate taxes for the amount set forth as the "upset price".

112. Subsequently, a 60 Day Notice of Intention to Sell Tax Liens was sent by the City, followed, most recently, by a 30 day notice.

113. The sale of tax lien pursuant to these notices is scheduled for on or around May 9, 2012.

114. Plaintiff need immediate injunctive relief to stay the sale of the tax lien in order to stop NYCTL, the City, and the other defendants acting under color of state law, from putting the finishing touches on the massive fraud being committed in violation of Plaintiff's Constitutional rights, as set forth extensively above.

## COUNT I
### (Declaratory and Equitable Relief for Deprivation of Property without Due Process of Law in Violation of the Fourth, Fifth, Eighth and 14th Amendment and 42 U.S.C. § 1983)

115. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "114" above with the same force and effect as if same were more fully set for that length herein.

116. All defendants were State Actors.

117. As set forth above, all defendants knew or should have known that there was no compliance with the mandated pre-sale and pre-foreclosure notice requirements, the foreclosure itself was rigged to deprive Plaintiff of its property rights, and that the foreclosure action should not have been filed and the Property not auctioned in this manner.

118. This Court should declare pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, that the Defendants took the Property of the Plaintiff without due notice and in violation of the Fourth, Fifth, Eighth and Fourteenth Amendment of the Constitution and 42 U.S.C. § 1983.

119. This Court should further declare that the assignments, sale and/or conveyance of the Tax Lien, to NYCTL, and any other conveyances of tax liens on the Property to NYCTL, are void.

## COUNT II
### (Damages for Violations of 42 U.S.C. § 1983)

120. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "119" above with the same force and effect as if same were more fully set forth at length herein.

121. The actions of the Defendants were with knowledge and deliberate in depriving Plaintiff of its property rights.

122. The Defendants are liable to Plaintiff for actual damages, attorneys' fees, and reasonable costs, pursuant to 42 U.S.C. § 1983.

## COUNT III
### (Enjoining Sale of Tax Lien, and for Preliminary Injunction)

123. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "122" above with the same force and effect as if same were more fully set for that length herein.

124. As set forth above, there is a sale of tax lien scheduled for on or about May 9, 2012.

125. In order to avoid the finishing touch on the massive fraud being committed in violation of Plaintiff's Constitutional rights, such sale should be enjoined.

126. In addition, the Court should issue a preliminary injunction enjoining the sale of the tax lien during the pendency of this action.

## COUNT IV
### (Permanently Enjoining the Tax Lien Foreclosure Proceeding, and for Preliminary Injunction)

127. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "126" above with the same force and effect as if same were more fully set for that length herein.

128. In order to avoid the unconstitutional taking of Plaintiff's Property, and further deprivation of Plaintiff's due process and equal protection rights, the Tax Lien Foreclosure Proceeding should be stayed during the pendency of this action.

129. As set forth above, there is currently pending in the Tax Lien Foreclosure Proceeding NYCTL's motion to approve the auction sale, which, as set forth extensively herein, was conducted in violation of Plaintiff's constitutional rights.

130. If the Auction sale is approved, the Plaintiff would lose all their interest in the Property.

131. Thus, the Tax Lien Foreclosure Proceeding should be stayed in order for this Court's judgment on the Constitutional issues raised herein to be effective.

132. Should the Tax Lien Foreclosure Proceeding continue, Plaintiff may lose the Property, and render moot the relief requested in this case.

## COUNT V
### (Order Compelling the City to Reassess the Real Estate Taxes Owed on the Property)

133. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs "1" through "132" above with the same force and effect as if same were more fully set for that length herein.

134. In order to rectify the blatant and deliberate violations of Plaintiff's Constitutional rights, the City should be ordered to re-assess the taxes assessed on the Property, and that the City should recalculate the actual amount of real estate taxes owing on the Property.

135. Accordingly, the Court should enter judgment directing the City to reassess the real estate taxes owed on the Property in accordance with the actual value of the Property.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

(a) Declaring that Defendants have violated the Plaintiff's Constitutional rights afforded to them by the First, Fourth, Fifth Eighth and 14th Amendment and 42 U.S.C. § 1983;

(b) Declaring that the deeds to Trust, and the conveyance of the Tax Lien, and any other tax lien on the Property to NYCTL are void, and that the register of Richmond County be directed to avoid the transfers;

(c) Ordering the Defendants to pay actual damages to Plaintiff, in an amount to be determined at trial;

(d) An injunction permanently enjoining the sale of the tax lien scheduled for on or about May 9, 2012;

(e) A preliminary injunction enjoining the sale of the tax lien scheduled for on or about May 9, 2012;

(f) An injunction permanently staying the Tax Lien Foreclosure Proceeding;

(g) A preliminary injunction staying the Tax Lien Foreclosure Proceeding during the pendency of this action;

(h) Judgment directing the City to reassess the amount of real estate taxes owed on the Property in accordance with the actual value of the Property; and

(i) The costs, disbursements and attorneys' fees of this action, together with such other and further relief as this Court may deem just, proper, and equitable.

Dated: Brooklyn, New York
April 30, 2012

**KORSINSKY & KLEIN, L.L.P.**
Attorneys for Plaintiff

By: _____
Michael Korsinsky

2926 Avenue L
Brooklyn, New York 11210
Phone: (212) 495-8133
Fax: (212) 419-3893
Email: mk@kklawfirm.com