UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>ONLINE PUBLICATION ONLY</u>

---

FOUR K. GROUP, INC.,

                                        Plaintiff,

                - versus -

NYCTL 2008-A TRUST; BANK OF NEW
YORK, as Collateral Agent and Custodian for
the NYCTL 2008-A Trust; MOORING TAX
ASSET GROUP, LLC; CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF
FINANCE; WINDELS MARX LANE &
MITTENDORF LLP; WILLIAM J. FREW; and
WILLIAM J. FREW LAW OFFICES,

                                        Defendants.

<u>MEMORANDUM</u>
<u>AND ORDER</u>
12-CV-2135 (JG)

---

FOUR K. GROUP, INC.,

                                        Plaintiff,

                - versus -

DAVID M. FRANKEL, Commissioner of the
New York City Department of Finance; NEW
YORK CITY DEPARTMENT OF FINANCE;
CARTER H. STRICKLAND, Commissioner of
the New York City Department of
Environmental Protection; NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION; ALBERT F. MONCURE, JR.,
Secretary of the New York City Water Board;
NEW YORK CITY WATER BOARD;
MATTHEW M. WAMBUA, Commissioner of
the New York City Department of Housing
Preservation and Development; NEW YORK
CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT;
BANK OF NEW YORK, as Collateral Agent
and Custodian for various NYCTL Trusts; and
JOHN DOES 1-100,

                                        Defendants.

<u>MEMORANDUM</u>
<u>AND ORDER</u>
12-CV-3172 (JG)

APPEARANCES:

KORSINSKY & KLEIN LLP
     2926 Avenue L
     Brooklyn, New York  11210
By:   Michael Korsinsky
     *Attorney for Plaintiff*

MICHAEL A. CARDOZO
     Corporation Counsel of the City of New York
     100 Church Street, Room 5-311
     New York, NY  10007
By:   Vincent D'Orazio
     Frances J. Henn
     *Attorneys for Defendants City of New York and New York City Department of Finance*[1]
By:   Jason Friedman
     Vincent D'Orazio
     Frances J. Henn
     *Attorneys for Defendants David M. Frankel, Carter H. Strickland, Albert F. Moncure, Jr., Mathew M. Wambua, New York City Department of Finance, and New York City Department of Environmental Protection, New York City Water Board, and New York City Department of Housing Preservation and Development*[2]

PILLSBURY WINTHROP SHAW PITTMAN LLP
     1540 Broadway
     New York, NY  1003
By:   Leo T. Crowley
     Ranah L. Esmaili
     *Attorney for Defendant Bank of New York*[3]

WINDELS MARX LANE & MITTENDORF LLP
     156 West 56th Street
     New York, NY  10019
By:   Bruce F. Bronster
     Delton Vandever
     *Attorneys for Defendants NYCTL 2008-A Trust, Bank of New York, Mooring Tax Asset Group LLC, and Windels Marx Lane & Mittendorf LLP*[4]

---

[1]     This appearance is in the first of the above-captioned cases (12-CV-2135).

[2]     This appearance is in the second of the above-captioned cases (12-CV-3172).  In it memorandum in support of its motion to dismiss, the City does not mention New York City Water Board or New York City Department of Housing Preservation and Development as among the defendants it represents.  At oral argument, the City clarified that it does also represent these two agencies.

[3]     This appearance is in the second of the above-captioned cases (12-CV-3172).

[4]     This appearance is in the first of the above-captioned cases (12-CV-2135).

2

JOHN GLEESON, United States District Judge:

Four K. Group ("Four K.") commenced these related actions pursuant to 42 U.S.C. § 1983 against a wide constellation of defendants, including the City of New York ("City") and various City agencies. Four K. alleges that the City's tax lien sale violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. Defendants in both actions move to dismiss Four K.'s complaints pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). I heard oral argument on April 11, 2013. For the reasons stated below, the defendants' motions to dismiss are granted.

## BACKGROUND

A.     *Factual Allegations*

Four K.'s complaints set forth the following factual allegations, which I accept as true for purposes of deciding this motion. See *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

1.     *The Parties*

Four K. is a corporation with a place of business at 1236 49th Street, Suite 4B, Brooklyn, New York 11219. Compl. 1 ¶ 11.[5] On or around March 10, 2006 Four K. acquired a mortgage lien on Block 1780, Lot 15, located at 422 Chelsea Road, Staten Island, New York (the "Property"). Compl. 1. ¶¶ 1, 19. In or about 2009 Four K. Group commenced a foreclosure proceeding against MMM Group, Inc. Compl. 1 ¶ 20. On or about May 6, 2011 a judgment of foreclosure was entered against MMM Group, Inc. Compl. 1 ¶ 21. On June 23, 2011 the Property

---

[5]     I refer to the complaint in the first of the above-captioned cases (12-CV-2135) as "Compl. 1" and the complaint in the second of the above-captioned cases (12-CV-3172) as "Compl. 2" throughout this opinion.

was conveyed to Four K., rendering Four K. the fee owner.  Compl. 1 ¶ 22-23; Bronster Aff. Ex. J.[6]

NYCTL 2008-A Trust ("NYCTL") is a Delaware Trust, which was created pursuant to an Agreement of Trust, dated June 1, 2002, between the City and the Wilmington Trust Company.  Compl. 1 ¶ 24.  NYCTL is the holder of certain City tax liens.  Compl. 1 ¶ 25.

The Bank of New York ("BNY") is the collateral agent and custodian for NYCTL.  Compl. 1 ¶ 13.  Mooring Tax Asset Group LLC ("Mooring") is the servicing agent of NYCTL.  Compl. 1 ¶ 16.  Windels Marx Lane & Mittendorf LLP ("Windels Marx") represented NYCTL and BNY in the foreclosure proceeding against the Property.  Compl. 1 ¶ 17.  Williams J. Frew and William J. Frew Law Offices were appointed Referee for the foreclosure of the Property.  Compl. 1 ¶ 18.

2.   *NYCTL's Tax Lien Against the Property*

On June 26, 2008 NYCTL acquired a tax lien on the Property.[7]  Compl. 1 ¶ 25; Bronster Aff. Ex. A.  NYCTL acquired this tax lien for less than the $110,000 owed in taxes on the property.  Compl. 1 ¶ 26-27.  The tax lien has priority over all other liens on the Property.  Compl. 1 ¶ 42-43.

---

[6]    Extrinsic documents may be considered as part of the pleadings if they are (1) attached to the complaint, *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); (2) incorporated into the complaint by reference, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); or (3) integral to the complaint, *id*. at 153 ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (citation and internal quotation marks omitted).  Defendants in both actions have submitted a considerable number of exhibits pertaining to the disposition of the Property.  Where these documents are incorporated into the complaint by reference or integral to the complaint, I cite to them.

[7]    The City conducts an annual tax lien sale of unpaid property taxes.  *See* JOHN C. LIU, NEW YORK CITY COMPTROLLER, THE NEW YORK CITY TAX LIEN SALE: HISTORY AND IMPACT 1 (2012).  The tax lien sale occurs in two main stages. *Id*. at 2-3.  In the first stage, the City bundles marketable tax liens into securities, which it sells to a third party Trust, which in turn borrows from institutional investors to pay the City up front. *Id*.  In the second stage, the Trust assumes responsibility for collecting the debt owed; after the Trust has repaid its investors, the additional revenues go to the City. *Id*.  This process permits the City to collect tax revenues up front without the burden of assuming ownership of properties through *in rem* foreclosure actions. *Id*.

Following NYCTL's acquisition of the tax lien on the Property, the City continued to assess taxes on the Property. Compl. 1 ¶ 28. The City assessed taxes on the Property at a rate "far in excess of the Property's true market price." Compl. 1 ¶ 29. The City assessed approximately $80,000 a year in real estate taxes, even though the Property had a market value of approximately $400,000. Compl. 1 ¶ 31. The City gave no notice to Four K. of the taxes being imposed on the Property until approximately November 2011. Compl. 1 ¶ 96.

On July 15, 2009 NYCTL and BNY commenced an action in the Supreme Court of the State of New York, County of Richmond, to foreclose its tax lien on the Property.[8] Compl. 1 ¶ 33; Bronster Aff. Ex. A. On September 2, 2009 Four K. filed a notice of appearance in this action. Bronster Aff. Ex. D. On October 5, 2010 the Supreme Court entered a Decision and Order granting NYCTL and BNY's motion to appoint a referee. Bronster Aff. Ex. E. In its Decision and Order, the Supreme Court noted that Four K. had filed an affidavit in opposition to this motion but had failed to interpose an answer and could not, therefore, "properly oppose th[e] motion for a referee." Bronster Aff. Ex. E. On January 10, 2011 the Supreme Court entered an Order appointing William J. Frew as referee "to ascertain and compute the amount due to plaintiffs." Bronster Aff. Ex. F. On April 26, 2011 the Referee issued its report, which ascertained the amount due to plaintiffs to be $110,011.92 plus interest. Bronster Aff. Ex. G.

On May 9, 2011 NYCTL and BNY moved in Supreme Court for entry of judgment of foreclosure and sale of the Property.[9] Bronster Aff. Ex. H. On October 19, 2011 the Supreme Court entered a judgment of foreclosure and sale. Bronster Aff. Ex. I. The judgment stated that each of the defendants had been served and/or appeared and that "none of the

---

[8]  Four K.'s ownership interest at the commencement of this state action was a mortgage lien on the property. *See* Compl. 1 ¶¶ 19-23.

[9]  On June 23, 2011 Four K. became the fee owner of the Property. *See id*. ¶¶ 22-23; Bronster Aff. Ex. J.

defendants had served any answer to said Complaint." Bronster Aff. Ex. I. The judgment ordered that the Property "be sold, in one parcel at public auction . . . by and under the direction of William J. Frew, Esq. who is hereby appointed Referee for that purpose." Bronster Aff. Ex. I. It further directed the Referee to "give public notice of the time and place of such sale" and "on receiving the proceeds of such sale . . . pay therefrom, the taxes, assessments, sewer, rents and water rates which are or may become liens on the premise at the time of sale." Bronster Aff. Ex. I. Finally, the judgment ordered that "each and all of the defendants in this action and all persons claiming under them . . . after the filing of such notice of pendency of this action . . . are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said liened premises . . . ." Bronster Aff. Ex. I.

On November 30, 2011 NYCTL and BNY served defendants in the foreclosure action, including Four K., with a notice of sale scheduled for February 7, 2012. Bronster Aff. Ex. K. The notice listed the approximate amount of the tax lien on the property as $110,011.92 plus interest and costs. Compl. 1 ¶ 55; Bronster Aff. Ex. K. The notice listed an erroneous address – 1422 (rather than 422) Chelsea Road, Staten Island, New York – for the Property. Compl. 1 ¶ 56; Bronster Aff. Ex. K.

Four K. appeared at the auction seeking to bid on the Property. Compl. 1 ¶ 58. Four K. requested to review the terms of sale. Compl. 1 ¶ 60. The Referee allowed Four K. to review the terms of sale but refused to answer any questions concerning ambiguities in the terms. Compl. 1 ¶ 61. The terms of sale did not indicate whether all outstanding taxes would be paid from the proceeds of the sale, and whether the successful bidder would receive title to the Property free and clear of all taxes. Compl. 1 ¶ 62. The Referee also refused to give Four K. a copy of the terms of sale. Compl. 1 ¶ 63.

6

NYCTL's opening bid on the Property was $471,030.17.  Compl. 1 ¶ 65.  Four K. protested during the bidding process that this opening bid was "a fraud, as no one would pay that much for the Property."  Compl. 1 ¶ 67.  The Referee held NYCTL to be the successful bidder at the Auction.  Compl. 1 ¶ 69.

On February 10, 2012 Four K. sent a letter to NYCTL's attorneys, protesting the auction and explaining the defects in the auction process.  Compl. 1 ¶ 70.  On or around February 28, 2012 NYCTL filed a motion to confirm the judgment of foreclosure and sale.  Compl. 1 ¶ 72. In that motion, NYCTL asserted that the "upset price"[10] on the Property to make NYCTL whole was $471,030.17.  Compl. 1 ¶ 74.  NYCTL will pay off the other tax liens and taxes owed on the Property for an amount less than the remaining real estate taxes owed on the property.  Compl. 1 ¶ 76.  NYCTL began marketing the Property to real estate brokers for approximately $110,000. Compl. 1 ¶ 77.

3.    *Tax Lien Sale*

On February 15, 2012 the City mailed a 90-day notice of intention to sell tax liens on the Property.[11]  Compl. 1 ¶ 104; Friedman Aff. Ex. 4.  This notice was for the sale of the approximately $211,174.13 in real estate taxes owed on the Property.  Compl. 1 ¶ 105.  The City subsequently sent a 60-day notice and a 30-day notice.  Compl. 1 ¶ 112; Friedman Aff. Ex. 4.

On May 7, 2012 the City published in the New York Daily News and other newspapers and publications that the tax lien sale was scheduled for August 3, 2011.  Compl. 2 ¶ 22; Friedman Aff. Ex. 2.  This announcement further advised that in order to avoid the August 3,

---

[10]    The "upset price" is the "lowest price at which an item of property may be auctioned or sold at public sale."  *Upset Price*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, http://www.thefreedictionary.com/upset+price.

[11]    At oral argument, the City clarified that this tax lien sale applied to a different tax lien than the one subject to foreclosure.

2011 sale, Four K. should make arrangements to pay the taxes by May 17, 2012.  Compl. 2 ¶ 22; Friedman Aff. Ex. 2.

        The City has a custom and practice of failing to provide and/or ensure the provision of timely and adequate notice of tax lien sales.  Compl. 2 ¶ 23.  This failure to provide timely and adequate notice is "done on behalf of and/or at the direction of Defendants NYCTL and BNY" so that NYCTL may "purchase the tax liens under special terms not available to any of the property owners."  Compl. 2 ¶ 24.  As a result of this failure, property owners whose properties were subjected to the tax liens "were forced to reach a settlement with the City Defendants."  Compl. 2 ¶ 25.

B.    *Procedural History*

        Four K. filed the complaint in the first of the above-captioned cases (12-CV-2135) on May 1, 2012, Compl. 1, ECF No. 1, and the complaint in the second of the above-captioned cases (12-cv-3172) on June 26, 2012, Compl. 2, ECF No. 1.  On January 25, 2013 David M. Frankel, Carter H. Strickland, Albert F. Moncure, Jr., Mathew M. Wambua, the New York City Department of Finance ("DoF"), New York City Department of Environmental Protection, New York City Water Board, and New York City Department of Housing Preservation and Development filed a motion to dismiss the complaint in the second of the above-captioned cases (12-CV-3172).  City Mot. Dismiss Compl. 2, ECF No. 20.  On the same day, BNY filed a motion to dismiss the complaint in that case.  BNY Mot. Dismiss Compl. 2, ECF No. 22.  On February 8, 2013 the City and DoF filed a motion to dismiss the complaint in the first of the above-captioned cases (12-CV-2135).  City Mot. Dismiss Compl. 1, ECF No. 21.  On the same day, NYCTL, BNY, Mooring, and Windels Marx filed a motion to dismiss the complaint in that case.  NYCTL Mot. Dismiss Compl. 1, ECF No. 24.  I heard oral argument on the motions on April 11, 2013.

DISCUSSION

A.    *The Standard of Review*

Moving defendants bring their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The standards of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim are "substantively identical."  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  However, on a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the party invoking the Court's jurisdiction bears the burden of demonstrating that subject matter jurisdiction exists, whereas the movant bears the burden on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  In deciding both types of motions, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005).

The Court's review on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, as noted above, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  In deciding a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits."  *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

B.      *Analysis*

Four K. challenges aspects of the City's tax lien sale as it affects the Property.  In the first of the above-captioned cases, Four K. focuses on the City's assessment of taxes on the Property and NYCTL's acquisition of the tax lien against the Property.  Specifically, Four K. alleges that the City's assessment of taxes on the Property were "confiscatory in nature" and imposed without notice.  Compl. 1 ¶¶ 29-32, 95-102.  In addition, Four K. alleges that NYCTL acquired the tax lien from the City at a discount and fraudulently acquired the Property through a state foreclosure proceeding and subsequent auction sale.  Compl. 1 ¶¶ 26-27, 34, 46-51, 65-66, 69-71.  Four K. asserts that these actions resulted in an unconstitutional taking of the Property and constitute a violation of its due process and equal protection rights.  Compl. 1 ¶¶ 7-8, 88-89.  The moving defendants contend that this complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that (1) the Tax Injunction Act and the principle of comity deprive this Court of subject matter jurisdiction; (2) the *Rooker-Feldman* doctrine deprives this Court of subject matter jurisdiction; and (3) Four K. fails to state a claim under 42 U.S.C. § 1983.[12]

In the second of the above-captioned cases, which is a putative class action, Four K. challenges the City's tax lien sale itself.  Specifically, Four K. alleges that defendants failed to provide notice of the tax lien sale on its Property and that there exists a custom and practice of failing to provide notice of tax lien sales.  Compl. 2 ¶¶ 22-23.  Four K. further alleges that this failure to provide notice forced property owners to reach settlements with the City and City agencies in order to protect their property rights.  Compl. 2. ¶ 25.  Four K. asserts that these

---

[12]       The moving defendants further assert that the complaint must be dismissed because the claims are barred by *res judicata* and collateral estoppel.  Because the motion can be disposed of without reaching these issues, I need not address them.

actions also resulted in unconstitutional takings of property and constitute a violation of due

process and equal protection.  Moving defendants contend that this complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that (1) the Court lacks subject

matter jurisdiction based on Four K.'s lack of standing and (2) Four K. fails to state a claim under

42 U.S.C. § 1983.

    1.    *The First Complaint*

        a.    *The Tax Injunction Act and the Principle of Comity*

           (1)    *The City's Assessment of Taxes on the Property*

The Tax Injunction Act ("TIA") provides that a district court "shall not enjoin or

restrain the assessment, levy or collection of any tax under State law where a plain, speedy and

efficient remedy may be had in the courts of such State."[13]  28 U.S.C. § 1341.  In *Hibbs v. Winn*,

the Supreme Court summarized the purpose of the Act as follows: "In short, in enacting the TIA,

Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a

challenge route other than the one specified by the taxing authority."  542 U.S. 88, 104-05 (2004);

*see also Wells v. Malloy*, 510 F.2d 74, 77 (2d Cir. 1975) ("[In enacting the TIA,] Congress was

thinking of cases where taxpayers were repeatedly using the federal courts to raise questions of

state or federal law going to the validity of the particular taxes imposed upon them.").  The Court

concluded that the TIA precluded federal jurisdiction where "state taxpayers seek federal court-

orders enabling them to avoid paying state taxes."  *Hibbs*, 542 U.S. at 107; *see also Luessenhop v.

Clinton County, New York*, 466 F.3d 259, 266 (2d Cir. 2006) ("*Hibbs* . . . explain[s] that Congress'

intent in enacting the T[ax Injunction Act] was the prevention of a particular evil; namely, using

---

[13]    Municipal and local taxes constitute state taxes for purposes of both the TIA and the principle of comity.  *See, e.g.*, *Hibbs v. Winn*, 542 U.S. 88, 100 n.1 (2004).

federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax

assessed against an individual or entity.").

     Moving defendants also raise the separate, albeit related, principle of comity.

Comity "counsels lower federal courts to resist engagement in certain cases falling within their

jurisdiction." *Levin v. Commerce Energy, Inc.*, 130 S.Ct. 2323, 2330 (2010).  "The doctrine

reflects

> 'a proper respect for state functions, a recognition of the fact that
> the entire country is made up of a Union of separate state
> governments, and a continuance of the belief that the National
> Government will fare best if the States and their institutions are left
> free to perform their separate functions in separate ways.'

*Id.* (quoting *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 112 (1981)).

The principle of comity "is more embracive than the TIA."  *Id.* at 2332.  Comity can preclude the

exercise of lower federal court  jurisdiction over tax matters that the TIA cannot reach.  *See id.* at

2331 ("[T]he [TIA] may be best understood as but a partial codification of the federal reluctance

to interfere with state taxation.").  Its constraints have particular resonance in the realm of

taxation, for "'[i]t is upon taxation that the several States chiefly rely to obtain the means to carry

on their respective governments, and it is of the utmost importance that the modes adopted to

enforce the taxes levied should be interfered with as little as possible.'"[14]  *Id.* at 2330 (quoting

*Dows v. Chicago*, 11 Wall. 108, 110 (1871)) (alteration in original).

---

[14]  In *Perez v. Ledesma*, Justice Brennan explained "the special reasons justifying the policy of federal
noninterference with state tax collection":

> The procedures for mass assessment and collection of state taxes and for
> administration and adjudication of taxpayers' disputes with tax officials are
> generally complex and necessarily designed to operate according to established
> rules.  State tax agencies are organized to discharge their responsibilities in
> accordance with the state procedures.  If federal declaratory relief were available
> to test state tax assessments, state tax administration might be thrown into

Under the TIA and the principle of comity, "[a]s long as the state provides sufficient remedies, the taxpayer is prohibited from filing suit in federal court."[15]  *Miller v. State of New York Division of Tax Appeals*, 480 F. Supp. 2d 574, 579 (E.D.N.Y. 2007) (citing *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976)).  A state remedy is sufficient "if it is procedurally adequate."  *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989) (citing *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512 (1981)).  A state need only provide "the taxpayer a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax."  *Rosewell*, 450 U.S. at 514 (citations and internal quotation marks omitted).

Here, Four K. alleges that the City's assessment of taxes against the Property was "confiscatory in nature."  Compl. 1 at 5.  In particular, it asserts that the taxes imposed by the City were "at an increased rate far in excess of the Property's true market price."  Compl. 1 ¶ 29; *see id.* ¶ 30 ("The amount of taxes imposed by the City was far greater in proportion to the value of Property.").  This claim, which challenges the amount of taxes imposed on the Property, falls squarely within the ambit of the TIA and the principle of comity.

The Second Circuit has held that New York provides adequate remedies under state law for taxpayers to challenge their real property assessment.  First, a New York taxpayer may "in a declaratory judgment action under New York C.P.L.R. § 3001 and New York General Municipal Law § 51, assert [his] challenges to the constitutionality of the assessor's methodology."  *Long*

---

disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law.  During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency.  Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in the state courts.

401 U.S. 82, 128, n.17 (1971) (opinion concurring in part and dissenting in part).
    [15]    Specifically, "[w]hile it is the Tax Injunction Act that prevents federal courts from giving injunctive relief or declaratory relief . . . it is the principle of comity that prevents a taxpayer from seeking damages in a § 1983 action."  *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989).

*Island Lighting Co.*, 889 F.2d at 431.  Moreover, a New York taxpayer may "prosecute its declaratory judgment action concurrently with . . . [A]rticle 7 proceedings that attack the validity of its assessments." *Id*. at 431-32.  "A second procedurally adequate remedy in which [a taxpayer] might attack the constitutionality of the assessment methodology would be a § 1983 action in state court." *Id*. at 432 (citing *Fair Assessment*, 454 U.S. at 116-17).  Accordingly, TIA and the principle of comity divest this Court of subject matter jurisdiction over Four K.'s challenge to the City's assessment of taxes on the Property.

(2)    *Notice of the City's Assessment of Taxes on the Property*

Four K. not only challenges the amount of taxes assessed against the Property but also the City's failure to provide notice as to these assessments.  Compl. 1 ¶¶ 29, 32.  Specifically, Four K. asserts that since it

> acquired its mortgage interest in the Property . . . the City's quarterly statements of account, notice of assessments, and notices of property value, concerning the real estate taxes on the Property were not mailed to the proper address of the owner of the Property, or to any proper address or person for that matter.

Compl. 1 ¶ 97.[16]  It claims that the City's failure to provide notice continued until "approximately November 2011, when, after acquiring fee ownership in the Property pursuant to the Referee's deed, [Four K.] contacted the City to send its real estate tax notices to [its] business office address."  Compl. 1 ¶ 98.

---

[16]    Four K. also asserts that prior to its acquisition of a mortgage interest in the Property, the City failed to provide notice of the amount of taxes assessed against the Property.  Comp. 1 ¶¶ 97, 99.  To the extent that Four K. challenges the City's failure to provide notice prior to Four K.'s acquisition of an ownership interest in the Property, it lacks standing to do so.  *See W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-08 (2d Cir. 2008) ("Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief. . . .  [T]he minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.").

The TIA and the principle of comity divest this Court of subject matter jurisdiction over this claim as well.  In *Greenberg v. Town of Scarsdale*, the Second Circuit upheld a decision dismissing a taxpayer's challenge to the assessment of his real property on the grounds that the TIA and the principle of comity deprived it of subject matter jurisdiction.  477 Fed. App'x 849, 850 (2d Cir. 2012) (summary order).  Importantly, on appeal, the plaintiff argued "that his complaint [wa]s not barred by the TIA or the principle of comity to the extent it . . . [also] assert[ed] a due process challenge to the notice of assessment."  *Id*.  But the Second Circuit concluded that all of the plaintiffs' claims were "'in effect seeking a federal-court ruling on a local tax matter,' which is precisely the type of suit the TIA and the principle of comity are intended to prohibit."  *Id*. (quoting *Bernard v. Village of Spring Valley*, 30 F.3d 295, 297 (2d Cir. 1994)).

The Second Circuit has explicitly held that "the TIA does not deprive the district courts of jurisdiction to determine the constitutionality of the notice provided to . . . taxpayers," where local authorities fail to provide notice of a pending foreclosure.  *Luessenhop*, 466 F.3d at 272.  But here, Four K. challenges the City's failure to provide notice of the amount of taxes assessed against the Property, rather than notice of a pending foreclosure, which constitutes a taking of property.  *Cf. id*. at 268-69 (discussing the requirements of due process before the government may take property).  Moreover, the taxpayers in *Luessenhop* are distinguishable in that they were "not attempting to avoid paying state taxes," or "contest[ing] the government's authority to collect property taxes," or "disput[ing] the assessments or amounts owed."  *Id*. at 268.  The Second Circuit concluded therefore that the taxpayers "d[id] not raise the specter of federal courts reducing the flow of money into state coffers – the evil that the TIA was intended to eradicate."  *Id*.  By contrast, like the plaintiff in *Greenberg*, Four K. brings multiple claims challenging the City's assessment of taxes against the Property, which taken together, raise this

15

specter.  Accordingly, the Court lacks subject matter jurisdiction over Four K's claims challenging the City's assessment of taxes against the Property, including its failure to provide notice.

b.     *The* Rooker-Feldman *Doctrine*

(1)    *State Foreclosure Proceeding and Auction Sale*

Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."  *Hoblock v. Albany County Board of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  To properly invoke the doctrine, (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  *Id*.

Here, the state court entered a Judgment of Foreclosure and Sale against defendants in that action, including Four K., on October 5, 2011.  Bronster Aff. Ex. I.  Four K. commenced this action on May 1, 2012.  Compl. 1.  Four K. challenges the foreclosure proceeding and the subsequent auction sale, which was authorized by the Judgment of Foreclosure and Sale.  In particular, Four K. asserts that it was deprived of its rights in the Property because  "the foreclosure itself was rigged to deprive [Four K.] of its property rights, and that the foreclosure action should not have been filed and the Property not auctioned in this manner."  Compl. ¶ 117.  Finally, Four K. invites this Court to review and reject the state court's Judgment of Foreclosure

16

and Sale.  Specifically, in its prayer for relief, Four K. asks this Court to declare "that the deeds to [the] Trust . . . are void, and that the register of Richmond County be directed to avoid the transfers," Compl. Prayer for Relief ¶ (b) and to preliminarily and permanently enjoin "the Tax Lien Foreclosure Proceeding," Compl. Prayer for Relief ¶ (f)-(g).  Accordingly, the *Rooker-Feldman* doctrine precludes this Court from exercising subject matter jurisdiction over Four K.'s claims challenging the state foreclosure proceeding and subsequent auction sale.

c.      *Failure to State a Claim under 42 U.S.C. § 1983*

(1)      *NYCTL's Acquisition of the Tax Lien*

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike.  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  To state a claim under the Equal Protection Clause, the plaintiff must first "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Second, the plaintiff must show that "the disparity in treatment cannot survive the appropriate level of scrutiny."  *Id*.  "Legislative acts that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality and must be upheld if 'rationally related to a legitimate state interest.'"  *Beatie v. City of New York*, 123 F.3d 707, 711 (2d Cir. 1997) (internal citations omitted).

Here, Four K. alleges that NYCTL acquired the tax lien on the Property "at a special discounted price, pursuant to its exclusive arrangement with the City."  Compl. 1 at 4.  Specifically, it asserts that "the City has granted NYCTL special status by not making them pay off full property taxes for properties it wants to acquire, including the Property while anyone else in the world does not have this option."  Compl. 1 ¶ 41.  These allegations fail to suggest that Four

17

K. was treated differently than others similarly situated; rather Four K. alleges the opposite, that NYCTL is treated differently from others because the City sells it tax liens at a discounted price. Compl. 1 ¶ 41; *id.* ¶ 37 ("The City allowed for the pay off of the Tax Lien for a discounted amount by NYCTL, but not to any other individuals (including anyone bidding at said tax auction), including the owners of the Property.").  In other words, Four K. alleges that it is in the same position as every other taxpayer in the City vis-à-vis the NYCTL.  Accordingly, Four K.'s claim that the NYCTL was treated favorably by acquiring the tax lien at a discounted rate must be dismissed for failure to state a claim.

2.      *The Second Complaint*

a.      *Article III Standing*

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, "the plaintiff must have suffered an 'injury in fact,'" which is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Id.*  (internal citations and quotation marks omitted).  Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Id.* (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) (alterations in original)).  Finally, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.*  (quoting *Simon*, 426 U.S. at 38).

Moving defendants argue that Four K. lacks standing to challenge the City's tax lien sale because it has failed to allege an injury in fact.  Specifically, they contend that Four K.

18

"does not allege that the tax liens on its property were sold in the lien sale on May 18, 2012, nor does it allege that it entered into any statutory payment plan in connection with the 2012 lien sale." City Mem. in Support Mot. Dismiss Compl. 2, at 7, ECF No. 21. Four K. responds that it has standing because it has asserted a breach of a "procedural right" – "i.e. the right to be given and to receive adequate notice of when its property rights w[ere] to be sold" – and that this alleged breach suffices for purposes of Article III standing. *Id*.

A plaintiff has standing to enforce a procedural right if he can show a concrete interest affected by the violation of that right. *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing. Only a 'person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy.'" (quoting *Lujan*, 504 U.S. at 573 n.7) (emphasis in original). Here, Four K. contends that the alleged failure to provide notice affected a concrete interest, specifically its ownership interest in the Property. The moving defendants' argument focuses on the actual outcome of the tax lien sale, rather than addressing this alleged procedural injury. In *Brody v. Village of Port Chester*, the Second Circuit considered and rejected a similar argument by a municipality in finding that a plaintiff had standing to bring a due process challenge to the municipality's failure to provide notice that it had issued a decision to condemn his commercial property. 345 F.3d 103, 111-13 (2d Cir. 2003). Specifically, the municipality argued that the plaintiff lacked standing because even if he had received adequate notice, the outcome would have been no different. *Id*. at 112. In rejecting this argument, the court held that "even if [the plaintiff] did not suffer any other actual injury, the fact remains that [it was] deprived of [its] right to procedural due process" and that "it is enough to

19

invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake." *Id*. at 112 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

> b.      *Failure to State a Claim*

Four K. fails, however, to allege sufficient facts to demonstrate that it did not receive adequate notice of the tax lien sale (thereby suffering a breach of its procedural right).[17] Its sole allegation related to the City's failure to provide adequate notice is that on May 7, 2012, the City published in the New York Daily News and other newspapers "that the intended sale of the tax lien was scheduled for August 3, 2011."[18] Compl. 2 ¶ 22. But in its first complaint, Four K. alleges that the City also mailed 90-day, 60-day, and 30-day notices of its intent to sell tax liens concerning the Property. Compl. 1 ¶¶ 104, 112. It noted that each of these notices stated that the sale of the tax liens "is scheduled for on or around May 9, 2012."[19] *Id*. It does not allege that it failed to receive these notices, or that these notices contained erroneous information. Accordingly, Four K.'s claim that the City failed to provide adequate notice of the tax lien sale must be dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated above, the motions to dismiss the complaints are granted. At oral argument, Four K. represented that the arguments for and against dismissal applied equally to William J. Frew and William J. Frew Law Offices, the only defendants not to move to dismiss.

---

[17] For the same reason, Four K's claim that the City and City agencies forced property owners to reach settlements to protect their property rights must fail. Four K. does not allege any facts that suggest it entered into any such settlement.

[18] Four K. provided an excerpt of this advertisement as an exhibit to its complaint, Compl. 2 Ex. A, and the City and DoF attached a full copy of this advertisement as an exhibit to their moving papers, Friedman Aff. Ex. 3. The City and DoF also attached a full copy of an earlier advertisement, dated February 15, 2012, as it appeared in the New York Daily News, which states that the tax lien sale will be "held on or about May 18, 2012." *Id*. Ex. 2.

[19] The City and DoF have attached copies of these notices as exhibits to their moving papers. *Id*. Ex. 4.

Accordingly, both complaints are dismissed in their entirety.  The Clerk is directed to close both cases.


SO ORDERED.

John Gleeson, U.S.D.J.


Dated: April 15, 2013
        Brooklyn, New York

21